IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

No. 19-2047

KERRY HICKS            PLAINTIFF

V.

MENA REGIONAL HEALTH            DEFENDANTS
SYSTEM; JAY QUEBEDAUX,
Individually and in his official
capacity as Chief Executive
Officer of Mena Regional Health
System, and JOHN SWEATT

## COMPLAINT

This is a suit for money damages, declaratory judgement and injunctive relief for violations by the Defendants of the Emergency Medical Treatment and Active Labor Act (EMTALA) and for medical negligence actionable under state law. This Court has jurisdiction pursuant to 42 USC §1395, et seq., and 28 USC §1331. Plaintiff invokes the pendent jurisdiction of this court to consider his state law claims.

## PARTIES

1) PLAINTIFF, Kerry Hicks, is a resident of Mena, Arkansas. His address is: 304 Seventh Street, Mena, Arkansas 71953.

2) DEFENDANT, Mena Regional Health System is a hospital owned and operated

by the City of Mena, Arkansas. It provides numerous medical and emergency services, including stroke care, and is funded, in part, by Medicare. This Defendant may be served with summons at 311 Morrow Street, Mena, Arkansas 71953

3) DEFENDANT, Jay Quebedeaux, is Chief Executive Officer of Mena Regional Health System and, as such, is ultimately responsible for the hiring, firing and training of medical staff, the setting and adherence to protocols, the conduct of hired and contracted staff, the adoption of and compliance with policies, and adherence to relevant laws and regulations. His address is: 149 Polk Road 714, Mena, Arkansas 71953.

4) DEFENDANT, John Sweatt, was at all times relevant to this suit, an emergency medical specialist employed by Mena Regional Health Systems to, in whole or in part, provide emergency medical diagnosis, stabilization and treatment. He is a licensed medical doctor with in excess of twenty (20) years experience. His address is: 512 Beachview Circle, Hot Springs, Arkansas 71913.

## FACTS

5) On April 4, 2017 Plaintiff presented to the emergency department of Mena Regional Health System in Mena, Arkansas, complaining of and exhibiting symptoms consistent with stroke, including left side numbness and weakness in

his left arm and leg, partial facial drooping and paralysis on the left side of his face, high blood pressure, and recurring slurred speech.

6) Plaintiff was, within a few minutes, escorted by a nurse, identified in MRHS records as A. Wheeler, to a large room with an examination table and his blood pressure was checked. The nurse stated to Plaintiff that his blood pressure was 179/102.

7) Within a half hour preceding the Plaintiff arriving at the emergency department his blood pressure was checked by a friend who is an LPN who was recently employed by the Defendant MRHS. The Plaintiff's blood pressure reading at that time was 181/105. This, and the Plaintiff's other stroke-like symptoms were witnessed by three other individuals, all of whom insisted to Plaintiff that he needed to seek emergency medical assessment and treatment.

8) At the emergency medical department Plaintiff was seen within minutes by Emergency Medicine Specialist, Dr. John Sweatt. Plaintiff informed Dr. Sweatt that he had taken an over-the-counter energy pill prior to presenting with symptoms consistent with stroke, and that it was "hopefully" only a reaction to the aforementioned energy pill.

9) Defendant, John Sweatt, performed a cursory physical examination of the Plaintiff, including listening to his heart and lungs with a stethoscope.

10) After Dr. Sweatt completed a cursory physical examination of the Plaintiff he

left the room to prepare Plaintiff's discharge orders. The Plaintiff remained on the examination table for an additional seven (7) minutes until his discharge order was completed.

11) Nurse Wheeler remained with the Plaintiff in the examination room, and told the Plaintiff that he was presenting with symptoms of Transient Ischemic Attacks (T.I.A.), and informed the Plaintiff that "T.I.A. is not an emergency".

12) Plaintiff was then discharged. The stated reason therefore being that "No emergency treatment is indicated". The single instruction to the Plaintiff on his discharge order was "Stay away from energy drinks".

13) As Plaintiff limped past Defendant Sweatt on his way out of the treatment room the Defendant wished the Plaintiff happy birthday.

14) The Plaintiff's stay in the MRHS emergency department, from admission to leaving after discharge, was 24 minutes. The decision to discharge the Plaintiff was made and the discharge order signed, after only 17 minutes of observation and examination.

15) Defendant Sweatt made no effort to identify the energy pill Plaintiff had taken or it's chemical composition or listed adverse effects.

16) Defendant Sweatt ordered no Complete Blood Count (CBC), CT scan, ultrasound or MRI, nor did he allow time for or order a period of observation.

17) Defendant Sweatt did not identify type or severity or speculate on the duration of any allergic reaction to an energy pill, and had even identified an energy pill as an energy drink.

18) Nurse Wheeler, having personally identified the Plaintiff's symptoms as TIA (commonly known as mini strokes), did not object to Defendant Sweatt's cursory examination and conclusions reached by Defendant Sweatt, nor did she report the matter to her supervisors.

19) In the hours following the Plaintiff's discharge his condition did not improve.

20) The following day the Plaintiff's wife and daughter arranged to take the Plaintiff to Malvern, where his sister lives, and to Baptist Health hospital in Malvern, where the Plaintiff was immediately administered blood tests, electrocardiogram, blood pressure monitoring, and a CT Scan. An MRI was scheduled for the following morning. The Plaintiff was admitted as a patient and diagnosed with having an Ischemic stroke.

21) The Plaintiff was hospitalized for three days. Plaintiff's recovery continues.

22) It has been a long-standing practice of MRHS for the receptionist at it's emergency department to solicit either a $50 payment or the signing of a promissory note by an uninsured individual seeking emergency treatment as a condition of said individual seeing any medical personnel.

23) Approximately one year after the Plaintiff's stroke a nursing home patient was

presented at MRHS emergency department with symptoms of a stroke. Defendant Sweatt sent her back to the nursing home without treatment. It is the Plaintiff's information and belief that said woman died of a stroke a few hours later.

24) Defendant Sweatt is no longer employed by MRHS.

25) Defendant MRHS has recently been designated a stroke-care hospital.

26) Certain of the Plaintiff's experiences at MRHS emergency department have been amended in his hospital records and are false.

27) Plaintiff has suffered significant pain and suffering, loss of consortium, emotional distress, mental anguish, loss of income and reduced earning capacity, as well as a degree of permanent disability since his stroke.

## CLAIMS

28) Plaintiff asserts that the Defendants, and each of them, had a duty to provide medical screening appropriate to the symptoms complained of or exhibited by the Plaintiff at the time he presented to the emergency department, and the Defendants, and each of them, breeched that duty by performing a medical screening of the Plaintiff, and in doing so in such a limited time-frame, that it was medically impossible to rule out that the Plaintiff had had or was having a stroke and that his life was in immediate danger, or that serious risk to his life and health would not be imminent.

29) Plaintiff asserts that a stroke is a condition in which a blockage occurs in blood vessels in the brain, disrupting blood and oxygen flow to the brain, and that such disruption, through blockage (ischemic stroke) or rupture of a blood vessel (hemorrhagic stroke) can cause permanent brain injury or death; that the type or cause or severity of a stroke cannot be determined without a Complete Blood Count, CT scan, or MRI; and that the Defendants, and each of them, knew, or should have known this protocol, and despite the Defendants holding out that they knew and practiced this protocol, they ignored it in the Plaintiff's case, and in at least one other case, to the injury of the Plaintiff, with reckless disregard for the health or life of the Plaintiff.

30) Plaintiff asserts that the Defendants, and each of them, aware of the appropriate screening requirements, of the Emergency Medical Treatment and Active Labor Act, and aware of their duty to treat, or stabilize and transfer the Plaintiff, chose to circumvent the purpose of the Act by providing a grossly inadequate screening that would relieve them of the duty duty to stabilize, treat or transfer the Plaintiff, and that the Plaintiff was discharged with such haste that it would potentially relieve the Defendants of the duty to expend the resources necessary to further assess or treat the Plaintiff.

31) Plaintiff asserts that it is the duty of MRHS, by and through it's Chief

Executive Officer, to train and supervise it's employees, to abide by the provisions of EMTALA, and to provide a reasonable standard of care to its patients and they grossly failed to do so, as set out in the facts of this case.

32) Plaintiff asserts that Defendant Sweatt grossly failed to abide by the provisions of EMTALA, and that he, and the other Defendants, grossly failed to provide reasonable and adequate medical screening and care to the Plaintiff as set out in this complaint, with reckless disregard for the Plaintiff's life and health.

33) Plaintiff asserts that he has been injured by the unlawful and negligent acts of the Defendants, and each of them, and that they are jointly and severally liable for said injuries.

34) Plaintiff reserves the right to amend and expand his complaint.

## RELIEF

35) Plaintiff requests such declaratory judgement and injunctive relief as this court deems appropriate.

36) Plaintiff requests compensatory damages from the Defendants for medical expenses, lost wages, reduced earning capacity, mental anguish, emotional distress, physical injury and disability, and pain and suffering in an amount to be later determined.

37) Plaintiff requests punitive damages from each Defendant in the amount of one hundred (100) thousand dollars.

WHEREFORE, Plaintiff prays this court will grant the relief sought, and such other and further relief this court deems just.

Respectfully Submitted,

*Kerry Hicks*
Kerry Hicks
Plaintiff, Pro Se

304 7th St.
Mena, AR 71953
(479) 216-5244

I declare under penalty of perjury the forgoing is true and correct.

*Kerry Hicks*
Kerry Hicks